IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| M & S GRADING, INC., | ) | |
| | ) | CASE NO. BK02-81632-TJM |
| Debtor(s). | ) | A09-8056-TJM |
| CONTRACTORS, LABORERS, TEAMSTERS | ) | |
| & ENGINEERS HEALTH and WELFARE | ) | |
| PLAN; CONTRACTORS, LABORERS, | ) | |
| TEAMSTERS & ENGINEERS PENSION | ) | |
| PLAN; and INTERNATIONAL UNION OF | ) | |
| OPERATING ENGINEERS, LOCAL NO. 571, | ) | |
| | ) | |
| Plaintiffs, | ) | CHAPTER 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| INTERNAL REVENUE SERVICE and | ) | |
| JAMES KILLIPS as Trustee of the M & S | ) | |
| Grading, Inc., bankruptcy estate, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This matter is before the court on cross-motions for summary judgment by the Internal Revenue Service (Fil. #36) and the plaintiffs (Fil. #43). M. H. Weinberg represents the plaintiffs, Dorotha M. Ocker and Shana M. Starnes represent the Internal Revenue Service, and Brandon R. Tomjack and T. Randall Wright represent James Killips. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

The plaintiffs' motion is denied. The defendant's motion is granted.

The plaintiffs (hereafter referred to as "the Plans"), which represent union employees of the debtor, hold an administrative expense claim exceeding $500,000.00 for delinquent mandatory contributions to employee benefit plans, as well as interest, liquidated damages, and attorneys' fees. The Internal Revenue Service ("IRS") holds an administrative claim of more than $1 million in post-petition taxes, penalties, and interest. Approximately $280,000.00 is available for distribution, so each party is maneuvering to recover as much of that amount as possible. The Plans filed this adversary proceeding to challenge the IRS's right to an administrative expense claim, and to either equitably subordinate that claim if it is in fact an administrative expense or require the trustee to recoup funds from secured creditor First National Bank of Omaha ("FNBO") if the court finds that FNBO collected money from the debtor which should have gone to the IRS instead. The IRS and

the Plans have both moved for summary judgment.

## I.  Summary Judgment Standard

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Ricci v. DeStefano, ___ U.S. ___, 129 S. Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). See also Celotex Corp., 477 U.S. at 324 (where the nonmoving party "will bear the burden of proof at trial on a dispositive issue," the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial").

## II. Factual Findings[1]

The following facts are not in dispute:

1.   The Contractors, Laborers, Teamsters & Engineers Health and Welfare Plan is a multi-employer health and welfare plan organized and existing pursuant to the Employee Retirement Income Security Act ("ERISA").

2.   The Contractors, Laborers, Teamsters & Engineers Pension Plan is a multi-employer pension plan organized and existing pursuant to ERISA.

3.   Operating Engineers, Local No. 571 ("the Union") is an unincorporated association acting as the exclusive bargaining agent for employees of M & S Grading, Inc., pursuant to a collective bargaining agreement ("CBA") which at all times material hereto has been in force and effect.

4.   The IRS is an administrative arm of the Department of the Treasury and the United States government.

5.   James Killips is the trustee in bankruptcy for M & S Grading, Inc., in its current Chapter 7 case and in its previous Chapter 11 case.

6.   The debtor filed its Chapter 11 petition on May 20, 2002.

---

[1]To the extent that any of these factual findings constitute conclusions of law, they shall be so construed.

7.   FNBO was the debtor's operating lender, and on the petition date was owed approximately $7.8 million. FNBO held a perfected security interest in substantially all of the debtor's assets, junior only to certain purchase money security interests held by equipment sellers.

8.   Pursuant to the CBA, which the debtor assumed, the employer owed gross wages, health and welfare contributions and pension contributions for employees represented by the Union.

9.   On July 26, 2002, the debtor, the IRS, and FNBO entered into a stipulation which required the debtor to file all of its federal tax returns and pay all federal taxes owed.[2]

10.   The stipulation also required the debtor to deposit payroll taxes into a special FNBO account and barred the debtor from depositing any tax funds into any other account.

11.   FNBO waived its security interest and right of set-off as to any taxes deposited into the special account.

12.   The stipulation was approved by the court on August 19, 2002.

13.   Between 2002 and 2005, the Plans continued to provide benefits to the debtor's employees, although the debtor failed to keep current on Plan contributions.

14.   The debtor also failed to deposit more than $900,000.00 of payroll taxes owed to the IRS into the special FNBO account.

15.   Mr. Killips became the bankruptcy trustee in the case on December 21, 2004.

---

[2]The relevant provisions of the stipulation are as follows:

　　　　IT IS FURTHER STIPULATED that debtor shall deposit, at the time each payroll is made, in Account Number 11282859, at FNBO, the aggregate of the employer's share of Social Security and FUTA taxes, plus all withholding, Social Security and excise taxes so deducted, withheld, collected or otherwise due by the debtor;
　　　　IT IS FURTHER STIPULATED that FNBO waives any security interest and right of setoff as to any taxes deposited into Account Number 11282859;
　　　　IT IS FURTHER STIPULATED that Debtor shall not deposit any tax funds into any account other than Account Number 11282859 without the express written consent of FNBO and the Service;
　　　　IT IS FURTHER STIPULATED that all of the employment taxes shall be paid to the Service by electronic funds transfer system immediately after they are deposited into the account[.]

Stipulation, at 2 (Fil. #110 in Case No. BK02-81632).

16.  Mr. Killips obtained knowledge of the July 26th stipulation after his appointment as trustee, but did not make tax deposits to the special account.

17.  Ultimately, the debtor's attempt at reorganization failed and operations ceased in January 2005.

18.  In February 2005, the debtor agreed to relief from the automatic stay as to FNBO.

19.  Neither the Plans nor the IRS objected to the requested relief, and the stay was lifted.

20.  FNBO received all of the debtor's assets under its security interest, including remaining accounts receivable of approximately $3.8 million.

21.  On March 31, 2005, the IRS filed a status report stating the debtor had misappropriated post-petition payroll taxes.

22.  The IRS holds an administrative claim of $1,108,047.15 for unpaid payroll taxes, interest and penalties.

23.  The bankruptcy case was voluntarily converted to Chapter 7 on June 13, 2005.

24.  The bank statements from June 1, 2004, through November 30, 2004, for the debtor's general operating account at FNBO account number 11283984 reflect income of more than $1,000,000.00 a month. The income between December 1, 2004, and December 31, 2004, was more than $700,000.00; for the period ending on January 31, 2005, income was about $187,000.00; for the month ending February 28, 2005, income was $72,000.00; for the month ending March 31, 2005, income was $11,000.00; and for April and May of 2005, it was zero.

25.  Pursuant to a court order dated August 20, 2009 (Fil. #941 in Case No. BK02-81632), the Plans have claims in the amount of $559,533.55 against M & S Grading, Inc., for Chapter 11 administrative expenses.

## III.  Equitable Subordination

The purpose of equitable subordination is to "undo or offset any inequity in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." Bunch v. J.M. Capital Fin., Ltd. (In re Hoffinger Indus., Inc.), 327 B.R. 389, 415 (Bankr. E.D. Ark. 2005) (quoting Bostian v. Schapiro (In re Kansas City Journal-Post Co.), 144 F.2d 791, 800 (8th Cir. 1944)). The court's power to exercise equitable subordination is limited; it is "not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but [is] limited to what the Bankruptcy Code itself provides." Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 24-25 (2000).

Equitable subordination of one claim in favor of another under 11 U.S.C. § 510(c) generally requires (1) some inequitable conduct by the claimant; (2) resulting in injury to other creditors or

conferring an unfair advantage on the claimant; and (3) an outcome from the subordination that is not inconsistent with other provisions of the Bankruptcy Code. <u>Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan v. M & S Grading, Inc. (In re M & S Grading, Inc.)</u>, 541 F.3d 859, 866 (8th Cir. 2008); <u>Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)</u>, 850 F.2d 1275, 1282 (8th Cir. 1988).

First, there has to be some showing of inequitable conduct. The Eighth Circuit Court of Appeals recently reiterated this in <u>Kaler v. Bala (In re Racing Servs., Inc.)</u>, 571 F.3d 729, 731 (8th Cir. 2009):

> [Section] 510(c)(1) of the Bankruptcy Code authorizes the bankruptcy court to subordinate an allowed administrative claim to other claims "under principles of equitable subordination." Equitable subordination requires proof of inequitable conduct by the claimant that injured other creditors or conferred an unfair advantage. <u>In re Bellanca Aircraft Corp.</u>, 850 F.2d 1275, 1282 (8th Cir. 1988). Fraud, illegality, and breach of fiduciary duty are misconduct that justifies equitable subordination. <u>See</u> <u>id.</u> at 1282 & n.13; <u>In re Missionary Baptist Found. of Am., Inc.</u>, 712 F.2d 206, 212 (5th Cir. 1983).

<u>Id.</u> at 731.

"Inequitable conduct has been regarded as a wrong or unfairness or, 'at the very least, a masquerade of something for what it is not.'" <u>Jacoway v. Dept. of Treasury-IRS (In re Graycarr, Inc.)</u>, 330 B.R. 741, 749 (Bankr. W.D. Ark. 2005) (quoting <u>In re Lifschultz Fast Freight</u>, 132 F.3d 339, 344 (7th Cir. 1997)).

The Plans argue that the misconduct in this case was the breach by IRS counsel of the fiduciary duty he allegedly owed to the debtor's employees and the Plans to collect the taxes withheld from their paychecks. While an attorney owes a duty to his or her client to use reasonable care and skill in the discharge of the attorney's duties, the Plans contend the facts of this case warrant the extension of counsel's duty to the Plans as the "direct and intended beneficiar[ies] of the attorney's services." <u>Perez v. Stern</u>, 777 N.W.2d 545, 551 (Neb. 2010). The Nebraska Supreme Court "articulated specific standards to guide the determination of whether such a duty exists":

1. the extent to which the transaction was intended to affect the third party;
2. the foreseeability of harm;
3. the degree of certainty that the third party suffered injury;
4. the closeness of the connection between the attorney's conduct and the injury suffered;
5. the policy of preventing future harm; and
6. whether recognition of liability under the circumstances would impose an undue burden on the profession.

<u>Id.</u> at 550-51.

-5-

The Plans take the position that they are third-party beneficiaries of the July 26, 2002, stipulation among FNBO, the IRS and the debtor, and that it was foreseeable that the IRS's failure to timely collect the withheld funds would harm the Plans and cause the type of administrative claim contest that has given rise to this litigation.

However, the Perez case, dealing with a question of legal malpractice, found a duty owed to the minor children of a decedent whose estate the attorney had been hired to represent in a wrongful death claim. The court specifically recognized exceptions to the listed guidelines for parties adverse to the attorney's client, for situations where the foreseeability of harm to the third party would be the only basis for imposing the duty, and for situations where the duty to a third party would conflict with the duty owed to the attorney's own client.

Under Nebraska law, a third-party beneficiary must establish that the contracting parties intended to provide for them in the agreement:

> In order for those not named as parties to a contract to recover thereunder as third-party beneficiaries, it must appear by express stipulation or by reasonable intendment that the rights and interests of such unnamed parties were contemplated and provision was made for them. A third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promisor and promisee.

Marten v. Staab, 543 N.W.2d 436, 442 (Neb. 1996).

Perez is not relevant in this context, nor is there any indication its standards apply to government attorneys, but even if it were relevant to this case and applicable to such attorneys, it seems clear from the facts of the present case that IRS counsel's duty to his client did not extend to the plaintiffs. Any or all of the three exceptions listed above appear to be applicable here, as the only allegation by the Plans in this regard is that the IRS should have foreseen that its failure to collect the withheld monies would harm the plaintiffs. That clearly falls within the second exception (foreseeability of harm as the only basis for the duty). The first exception applies because the interests of the Plans and the IRS, as creditors of the same debtor, were adverse, in that each party was or should have been interested in protecting its own legal rights, rather than relying on another creditor to do so.[3] The third exception, for situations where the duty to a third party would conflict with the attorney's duty to his or her own client, is implicated as well. There is no basis for recognizing in hindsight an unforeseen and unilaterally imposed fiduciary duty to the Plans on counsel for the IRS when the interests of the IRS and the Plans were not clearly aligned and so close

---

[3]The Plans suggest they and the IRS were "allies in protecting the employees" and did not become adversaries until funds to pay administrative expenses became available in late February 2009. The parties may have had a similar interest in the withholding taxes being paid, but it strains logic to transform an interest in recovering money into a fiduciary duty extending to a third party.

as to lead to the conclusion at the time that what would benefit one would benefit the other.[4]

While the Eighth Circuit stated in dicta in the appeal of a related adversary proceeding that a showing of inequitable conduct is not necessary for equitable subordination of tax penalties[5], M & S Grading, 541 F.3d at 867 n.5 (citing Schultz Broadway Inn v. United States, 912 F.2d 230, 233 (8th Cir. 1990)), there is also guidance from the Supreme Court discouraging courts from exceeding their authority by rewriting the Bankruptcy Code to alter congressionally established payment priorities. See United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 228-29 (1996) (stating that subordination turning "on nothing other than the very characteristic that entitle[s] the Government's claim to priority under §§ 507(a)(1) and 503(b)(1)(C) . . . is beyond the scope of judicial authority" (citing United States v. Noland, 517 U.S. 535 (1996)); Holloway v. IRS (In re Odom Antennas, Inc.), 340 F.3d 705, 709 (8th Cir. 2003). In other words, tax penalties may not be subordinated merely because they are tax penalties; to succeed, the plaintiff must establish inequitable conduct by the IRS or otherwise explain how the equities favor subordination of the penalties for its benefit. Odom Antennas, 340 F.3d at 709.

The Plans invoke equitable arguments about the IRS's failure to collect the taxes, but do not identify any authority for their position that the IRS owed a duty to the Plans to collect the withheld taxes before the funds went elsewhere, nor is the court able to find any such authority. The stipulation imposed a duty on the debtor to transfer the employment taxes to the IRS, and indicated that failure of the debtor to comply could result in conversion or dismissal of the case, but the stipulation does not provide a deadline by which the debtor was to transfer the deposited funds to the IRS or compel the IRS to follow up to ensure the transfers were timely made. Clearly, the debtor's failure to make those transfers has had dire repercussions in this case, but there is no legal basis for shifting the consequences predominantly to the IRS.

Accordingly, the Plans have not established the necessary elements for equitable subordination of the IRS's claim.

## IV.  Equitable Estoppel

Likewise, the plaintiffs argue that the IRS should be equitably estopped from recovering on its administrative claim by its "affirmative misconduct" in failing to collect the taxes. Equitable estoppel generally requires that the party claiming the estoppel "must have relied on its adversary's conduct in such a manner as to change his position for the worse, and that reliance must have been

---

[4]Moreover, it is unclear whether the breach of a duty owed to the Plans by counsel for the IRS, if such a duty were to exist, could be ascribed to the client to justify a finding that the IRS was guilty of inequitable conduct resulting in the subordination of its claim.

[5]Tax penalties have been subordinated on the theory that such penalties are non-pecuniary and it is appropriate to compensate pecuniary claim holders before non-pecuniary claim holders. In re Best Refrigerated Express, Inc., 192 B.R. 503, 508-09 (Bankr. D. Neb. 1996).

reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 59 (1984) (internal quotations omitted). However, the ability of a litigant to assert equitable estoppel against the government is an open question. Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 423 (1990) ("We leave for another day whether an estoppel claim could ever succeed against the Government.").

Even if the government may be estopped, the party asserting the estoppel must prove: (1) a false representation by the government; (2) the government's intent to induce the plaintiff to act on the misrepresentation; (3) the plaintiff's lack of knowledge or inability to obtain the true facts; (4) the plaintiff's detrimental reliance; and (5) affirmative misconduct by the government. Mejia-Perez v. Gonzales, 490 F.3d 1011, 1012 (8th Cir. 2007). Before determining whether the Plans were prejudiced by the IRS's conduct, the court must first consider whether the Plans have established affirmative misconduct. Id. (holding that INS's nine-year delay in processing application for asylum, without more, was not affirmative misconduct); Clason v. Johanns, 438 F.3d 868, 872 (8th Cir. 2006) (equitable estoppel against the government requires proof of affirmative misconduct; here, the FSA officer's comments upon which plaintiff relied were, at most, "the product of negligence, which is insufficient to satisfy [plaintiff's] heavy burden of proof."). This burden of proof is "a heavy burden [for the plaintiff] to carry." Morgan v. Comm'r, 345 F.3d 563, 566 (8th Cir. 2003). The Morgan case involved the IRS's failure to correct the taxpayer's misunderstanding of the IRS's position regarding the abatement of certain taxes owed and its subsequent levy thereon, a misunderstanding of which the IRS was aware. In declining to estop the government's collection efforts, the Eighth Circuit Court of Appeals stated, "[A]s the Supreme Court has instructed, 'not even the temptations of a hard case' can justify the application of estoppel against the government." Id. at 567 (quoting Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947)). When the IRS does not act to purposely mislead someone, its negligence and possible bad faith are insufficient grounds for estoppel. Id. (citing Wang v. Att'y Gen., 823 F.2d 1273, 1277 (8th Cir. 1987) (INS's delay in processing application for permanent residency, and improper efforts to blame applicant for the delay, deserved criticism but did not constitute affirmative misconduct)).

There is a decision from a bankruptcy court within the Eighth Circuit finding affirmative misconduct on the part of the IRS because the IRS deliberately

> created a situation that would necessarily lead the Plaintiff to believe that [a signed settlement with the IRS for taxes due for 1995 also took care of some disputed taxes due for 1982]. The IRS's actions in instigating the 1995 assessment [including amounts purportedly due for the 1982 tax year] and allowing it to take place despite the ongoing Tax Court Litigation [regarding the 1982 taxes] constitutes affirmative misconduct.

Seay v. IRS (In re Seay), 353 B.R. 614, 625 (Bankr. E.D. Ark. 2006).

However, the Seay opinion does not address the Eighth Circuit's position, as expressed in Morgan and Wang, that negligence and possible bad faith are insufficient grounds for equitable estoppel, instead citing two cases from the federal courts in Colorado for the proposition that merely

-8-

giving incorrect information is adequate to support a finding of affirmative misconduct. 353 B.R. at 624. Accordingly, <u>Seay</u> is not persuasive precedent in this matter.

In the present case, there is no evidence of misrepresentations or misleading statements by the IRS. The Plans' allegations are based on inferences they have read into the July 26th stipulation and on IRS conduct that was, at most, negligent. Because there has been no showing of affirmative misconduct on the part of the IRS, there is no need to address the other elements of equitable estoppel.

## V.  Conclusion

The Plans have not borne their burden of proving each of the necessary elements of equitable subordination or equitable estoppel, in particular the existence of misconduct on the part of the IRS. Therefore, the Plans' motion for summary judgment should be denied, and the IRS's motion for summary judgment should be granted.

As it appears from the adversary complaint that the Plans may intend to pursue a cause of action against the bankruptcy trustee, judgment will not be entered on these motions at this time.

IT IS ORDERED: The Internal Revenue Service's motion for summary judgment (Fil. #36) is granted. The plaintiffs' motion for summary judgment (Fil. #43) is denied.

DATED:        July 19, 2010

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:

*M. H. Weinberg
*Dorotha M. Ocker
Shana M. Starnes
Brandon R. Tomjack
T. Randall Wright
U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.